1  MICHELE BARNES (SBN 187239)
   michele.barnes@klgates.com
2  ZACHARIAH D. BAKER (SBN 271620)
   zac.baker@klgates.com
3  PETER E. SOSKIN (SBN 280347)
   peter.soskin@klgates.com
4  K&L GATES LLP
   Four Embarcadero Center, Suite 1200
5  San Francisco, CA 94111
   Telephone:  415 882 8200
6  Facsimile:  415 882 8220

7  Attorneys for Defendant
   CRANE CO.

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11 BARRY KELLY and MOLLY KELLY,          Case No.    11-cv-03240-CRB (JSC)

12            Plaintiffs,                **CRANE CO.'S TRIAL BRIEF
                                         REGARDING MARITIME LAW**
13 vs.

14 CBS CORPORATION, et al.,

15            Defendants.

16

17

18

19

20

21

22

23

24

25

26

27

28

RECYCLED PAPER

CRANE CO.'S TRIAL BRIEF RE: MARITIME LAW

## I.   INTRODUCTION

Defendant Crane Co. hereby submits its trial brief in response to this Court's inquiry on the following topics:

(i)     Is it correct that maritime law should apply to this case?

(ii)    What are the differences, as applied to this case, between maritime law and California law?

(iii)   Should the application of maritime law change any of the Court's rulings on the motions in limine?

## II.   MARITIME LAW SHOULD APPLY TO THIS CASE

Maritime law applies to the claims against Crane Co. in this case because (1) Mr. Kelly's alleged work with and around Crane Co. valves was performed only on a U.S. Navy vessel, (2) his alleged asbestos exposures are potentially disruptive to maritime commerce, and (3) his work bore a substantial relationship to maritime activity. See, e.g., *Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 461–67 (E.D. Pa. 2011); *John Crane, Inc. v. Jones*, 650 S.E.2d 851 (Va. 2007); see also *Deuber v. Asbestos Corp. Ltd.*, No. 2:10-cv-78931-ER, 2011 WL 6415339, at *3–4 (E.D. Pa. Dec. 2, 2011) (stating that work performed aboard a ship that is docked at a shipyard is "sea-based work," performed on navigable waters).[1]

## II.   DIFFERENCES BETWEEN MARITIME LAW AND CALIFORNIA LAW

### A.   Design Defect claim.[2]

Plaintiffs' complaint asserts a claim for strict liability-design defect under the "consumer expectations test" set forth at CACI 1203.  However, maritime law does not recognize the consumer expectations test, but requires the risk-utility analysis of a design defect claim.  Moreover, the burden of proof under maritime law remains entirely with the plaintiff rather than shifting to the defendant as is the case under California state law.

---

[1] *See also*, Order denying Crane Co.'s motion for summary judgment in this matter which states:  "It is undisputed that Plaintiff's alleged exposure to Defendant's product(s) occurred while aboard a ship. Therefore, this exposure was during sea-based work. *See Conner*, 799 F. Supp.2d 455. Accordingly, maritime law is applicable to Plaintiff's claims against Defendant. *See id.* at 462-63."

[2] Maritime law recognizes a strict liability failure to warn claim as set forth in Restatement (Third) of Torts, but it does not differ significantly from California's failure to warn claim as set forth in the parties' stipulated proposed jury instruction 43, which restates BAJI 9.00.7.

RECYCLED PAPER

CRANE CO.'S TRIAL BRIEF RE: MARITIME LAW

1   As a preliminary matter, federal maritime law is guided by the American Law Institute's

2   Restatement of Torts. *See Pan-Alaska Fisheries, Inc. v. Marine Constr. & Design Co.*, 565 F.2d

3   1129, 1134 (9th Cir. 1977).  Since the Restatement (Third) was finalized in 1998, the Ninth Circuit

4   has relied on the Restatement (Third) of Torts: Products Liability to guide its assessment of product

5   liability claims. *Oswalt v. Resolute Industries, Inc.*, 642 F. 3d 856 (9th Cir., 2011).

6   A design defect under the Restatement (Third) of Torts requires:

7   [A product] is defective in design when the foreseeable risks of harm

8   posed by the product could have been reduced or avoided by the adoption

9   of a reasonable alternative design by the seller or other distributor, or a

10   predecessor in the commercial chain of distribution, and the omission of

11   the alternative design renders the product not reasonably safe.

12   Maritime law, under the Restatement, does not allow for the consumer expectations test and

13   requires analysis under a risk-benefit or risk-utility test.  "Federal admiralty law, like the Restatement

14   of Torts, has gradually moved from the ephemeral consumer expectations test to the more concrete

15   risk-utility test of the Restatement (Third)."  *Oswalt v. Resolute Indus., Inc.*, *supra*, 642 F.3d at 60;

16   *see generally* Tony Nunes, Charterer's Liabilities Under the Ship Time Charter, 26 Hous. J. Int'l L.

17   561, 586 (2004) ("[T]he U.S. Supreme Court has recognized that the law of products liability is part

18   of the general maritime law. U.S. courts currently apply, among other tests used to determine

19   liability, the rule set forth in section 2(b) of the Restatement (Third) of Torts: Products Liability.").

20   "[W]hether a design is 'reasonably safe' is generally to be 'assessed through use of risk-utility

21   balancing.' " *Dehring v. Keystone Shipping Co.*, 2013 U.S. Dist. LEXIS 104780, *19 (E.D. Mich.

22   2013) (quoting *Stark v. Armstrong World Indus., Inc.*, 21 Fed.Appx. 371, 375 (6th Cir. 2001)).

23   Similarly, the Sixth Circuit has noted that not applying risk-utility analysis in a maritime case can

24   constitute reversible error. *Stark v. Armstrong World Indus., Inc.*, 21 Fed.Appx. 371, 375 (6th Cir.

25   2001) (citing *Krummel v. Bombardier Corp.*, 206 F.3d 548, 552 (5th Cir. 2000)).  As such, the only

26   applicable design defect analysis under maritime law is the risk-utility test.

27

28

**CRANE CO.'S TRIAL BRIEF RE: MARITIME LAW**

1    Moreover, the burden of proof on a risk utility test under the Restatement (Third) of Torts

2    rests exclusively on Plaintiffs. *Dehring v. Keystone Shipping Co.,* 2013 U.S. Dist. LEXIS 104780,

3    *20 (E.D. Mich. 2013):

4              The plaintiff bears the burden of showing that the probability and

5              severity of harm outweigh the burden involved in curing the

6              defect. … this test generally "requires the plaintiff to produce

7              evidence concerning the frequency of accidents like his own, the

8              economic costs entailed by those accidents, or the extent of the

9              reduction in frequency of those accidents that would have followed

10              on the use of his proposed alternative design."

11    By contrast, under CACI 1204 -- which sets for the elements of a risk-benefit test under

12    California law -- once a plaintiff sets forth a prima facie case, the burden of proof shifts to the

13    defendant to prove "that the benefits of the product's design outweigh the risks of the design."

14    **B.**    <u>Substantial Factor Causation</u>

15    To prove causation under maritime law, Plaintiffs must prove that Mr. Kelly's exposure to

16    each defendant's products was "a substantial factor in causing the injury he suffered." *Lindstrom v.*

17    *A–C Prod. Liab. Tr.,* 424 F.3d 488, 492 (6th Cir.2005).   To establish this element, Plaintiffs must

18    present evidence of substantial exposure for a substantial period of time. *Id.*; *see also Stark v.*

19    *Armstrong World Indus., Inc.*, 21 Fed.Appx. 371, 379 (6th Cir. 2001) (finding that a plaintiff must

20    develop evidence of the "extent and nature of his exposure" to the product at issue). "Minimal

21    exposure" to a defendant's product is insufficient. *Lindstrom*, 424 F.3d at 492.  Plaintiffs must show

22    "a high enough level of exposure that an inference that the asbestos was a substantial factor in the

23    injury is more than conjectural." *Id.*

24    By contrast, to prove causation under California law, Plaintiffs must present evidence that

25    there is "a reasonable medical probability that the exposure was a substantial factor contributing to

26    his risk of developing cancer." *Rutherford v. Owens-Illinois, Inc.* (1977) 16 Cal.4th 953.  As

27    Plaintiffs' objection to disputed (California) jury instruction No. 52 explains:

28

1    With regard to "substantial factor," Rutherford purposely notes that the
2    concept "has not been judicially defined with specificity . . . it is 'neither
3    possible nor desirable to reduce it to any lower terms.'" Id. at 969 (internal
4    citations omitted). Further, "[u]ndue emphasis should not be placed on the
5    term 'substantial.'" Id. at 969 (emphasis added). Finally, "[t]he substantial
6    factor standard is a relatively broad one, requiring only that the
7    contribution of the individual cause be more than negligible or
8    theoretical...." Id. at 978 (emphasis added).

9    C.    Loss of Consortium

10   Mrs. Kelly's loss of consortium damages are not available under maritime law. *Chan v. Soc'y*
11   *Expeditions, Inc.*, 39 F.3d 1398, 1408 (9th Cir. 1994) (citing *Miles v. Apex Marine Corp.*, 498 U.S.
12   19, 31-32 (1990).)

13   D.    Allocation of Damages

14   Maritime law allows for apportionment to all parties at trial and all settling parties, each of
15   whom should be listed on the verdict form. *See McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994).
16   All damages are several, and each trial defendant shall bear only its share of the assessed liability. *Id.*
17   at 211-18 (1994). *McDermott* controls who receives a fault allocation.

18   Under California law, Proposition 51 governs the allocation of damages. Civil Code section
19   1431.2. Economic damages are joint and several. Non-economic damages are several, and each
20   defendant shall be liable only for the amount of non-economic damages allocated to that defendant in
21   direct proportion to that defendant's percentage of fault. *Id.* Damages must be apportioned among
22   the "universe of tortfeasors," not just those named in the action. *DaFonte*, supra, 2 Cal.4th at p. 603;
23   *Bly-Magee v. Budget Rent-A-Car Corp.* (1994) 24 Cal.App.4th 318, 325-326. The verdict form must
24   be crafted in light of the fact "that a defendant may be found liable for noneconomic damages only in
25   proportion to the total fault of all persons whose acts were a legal cause of the plaintiff's injuries,
26   whether or not all such persons have appeared in the action." *Scott v. County of Los Angeles* (1994)
27   27 Cal.App.4th 125, 136.

28

4

RECYCLED PAPER

1 **III.   IMPACT OF MARITIME LAW ON THIS COURT'S RULINGS ON MOTIONS IN**

2 **LIMINE**

3        Defendants' motion *in limine* # 2 asked this court to preclude Plaintiffs' experts from offering

4 "each and every exposure" opinions based upon two grounds:  (1) the opinions fail to satisfy the

5 reliability and relevant standard under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579

6 (1993); and (2) because the opinions contradict California's legal causation standard under

7 *Rutherford v. Owens Illinois, Inc.*, 16 Cal.4th 953, 978 (1997).

8        As set forth above, the standard for substantial factor causation under maritime law

9 ("substantial factor in causing the injury he suffered") differs from California law ("substantial factor

10 contributing to his risk of developing cancer").  Thus, Defendants request that the Court reconsider its

11 ruling within the context of maritime law under *Lindstrom v. A–C Prod. Liab. Tr.*, 424 F.3d 488 (6th

12 Cir.2005) and *Krik v. Crane Co.*, --- F.Supp.3d ----, 2014 U.S. Dist. LEXIS 175983 (N.D. Ill., Dec.

13 22, 2014).

14        The *Lindstrom* and *Krik* cases specifically address the type of expert opinion that is necessary

15 to be admissible to prove up substantial factor causation under maritime law.  In *Lindstrom*, the court

16 excluded expert opinion that "did not reference any specific defendant or product, but rather states in

17 a conclusory fashion that every exposure to asbestos was a substantial factor in Lindstrom's illness."

18 *Lindstrom*, 424 F.3d at 493.  The Court clarified that "[t]he requirement, however, is that the plaintiff

19 make a showing with respect to each defendant that the defendant's product was a substantial factor

20 in plaintiff's injury."  *Id.*  Similarly, in *Krik* the court found expert testimony inadmissible and

21 insufficient under maritime law where the opinion failed to present any "individualized analysis of

22 [the plaintiff's] level of asbestos exposure."  *Krik*, 2014 U.S. Dist. LEXIS 175983 at *16.

23        Here, Plaintiffs' medical expert reports fail to include "reference to any specific defendant" or

24 "individual analysis."  As such, they should be precluded from offering any opinion at trial that

25 exposure to the individual defendants are a substantial factor causing the injury Mr. Kelly suffered, or

26 from offering any generic opinion that "every exposure" is causative of his disease.  Moreover,

27 defendants ask this court to preclude Plaintiffs' experts from offering the following opinions:[3]

28 _____

[3] In prior cases, Plaintiffs' expert Dr. Brody and Dr. Hammar have attempted to offer opinions that
each and every exposure a plaintiff has contributes to an increased risk of disease.  However, their

RECYCLED PAPER

5

- <u>Dr. Ganzhorn</u>: "All of Mr. Kelly's asbestos exposures up until a period of 15 years prior to his diagnosis with malignant peritoneal mesothelioma…should be thought of as causing Mr. Kelly's malignant peritoneal mesothelioma." Dr. Ganzhorn's Expert Report dated March 6, 2015, at p. 11, attached as Exhibit A to the Declaration of Peter E. Soskin ("Soskin Decl.").

- <u>Dr. Horn</u>: (1) "I expect to talk about causation as it specifically relates to Mr. Kelly." Dr. Horn's Expert Report dated January 7, 2013, at p. 18, attached as Exhibit B to the Soskin Decl.; and (2) "I have concluded that the work done by other military personnel with gaskets and packing contributed to his risk for the development of mesothelioma." Dr. Horn's Expert Report dated January 7, 2013, at p. 19, attached as Exhibit B to the Soskin Decl.; (3) "All of Mr. Kelly's asbestos exposure should be considered a contributing factor in the development of his malignancy." Dr. Horn's Expert Report dated December 12, 2011, at p. 25, attached as Exhibit C to the Soskin Decl.

- <u>Dr. Cohen</u>: "In my opinion, any exposures that an individual suffered that were in addition to ambient air levels, such as those alleged in this case as to each defendant, would, on a more likely than not basis, have been a substantial factor in causing the alleged disease." Dr. Cohen's Expert Report dated January 7, 2013, at p. 3, attached as Exhibit D to the Soskin Decl.

K&L GATES LLP

Dated: April 29, 2015                    By:  _____
                                             Peter E. Soskin
                                             Attorneys for CRANE CO.

reports in the present case fail to identify substantial factor opinions as being within the scope of their testimony in this case, and they fail to contain any reference to a specific defendant and/or individual analysis and therefore should not be permitted to offer new substantial factor opinions at trial. Fed. R. Civ. P. 26(a)(2)(B) & 37(c)(1); Dr. Brody's Expert Report dated January 4, 2013, attached as Exhibit E to the Soskin Decl.; Dr. Hammar's Expert Report dated January 2, 2013, attached as Exhibit F to the Soskin Decl.

RECYCLED PAPER

**CRANE CO.'S TRIAL BRIEF RE: MARITIME LAW**