1 | GEORGE D. YARON, ESQ. (California State Bar #96246)
D. DAVID STEELE, ESQ.    (California State Bar #171636)
2 | **YARON & ASSOCIATES**
1300 Clay St, Suite 800
3 | Oakland, California 94612
Telephone: (415) 658-2929
4 | Facsimile:  (415) 658-2930

5 | Attorneys for Defendant
PUGET SOUND COMMERCE CENTER, INC., erroneously sued
6 | as and formerly known as TODD SHIPYARDS CORPORATION

7 |

8 | UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

9 |

| | | |
|---|---|---|
| BARRY KELLY and MOLLY KELLY, | ) | Case No. 3:11-cv-03240-VC |
| | ) | |
| Plaintiffs, | ) | PUGET SOUND COMMERCE CENTER, INC.'S TRIAL BRIEF REGARDING |
| | ) | MARITIME LAW |
| vs. | ) | |
| | ) | |
| CBS CORPORATION (FKA VIACOM INC., | ) | |
| FKA WESTINGHOUSE ELECTRIC | ) | Trial Date:    May 11, 2015 |
| CORPORATION), et al., | ) | Judge:         The Hon. Vincent Chhabria |
| | ) | Dept.          Courtroom 4 - 17th Floor |
| Defendants. | ) | |
| | ) | |

## I.     INTRODUCTION

Defendant PUGET SOUND COMMERCE CENTER, INC., erroneously sued as and

formerly known as TODD SHIPYARDS CORPORATION, hereby submits its brief in response

to the Court's inquiry on the following topics:

(1)     Is it correct that maritime law should apply to this case?

(2)     What are the differences, as applied to this case, between maritime law and
        California law?

(3)     Should the application of maritime law change any of the Court's rulings on the
        motions in limine?

## II.    MARITIME LAW SHOULD APPLY TO THIS CASE

Whether admiralty law applies requires the party seeking to invoke maritime law to meet

two tests, both of which must be met for admiralty law to apply -- the location of the wrong (i.e.,

the "location test"), and whether the wrong bears a significant relationship to traditional maritime

activity (i.e., the "connection test"). (See, e.g., *Taghadomi v. United States*, 401 F.3d 1080, 1084

1  (9th Cir. 2005).)

2      In *Stevens v. CBS Corp.*, 2012 U.S. Dist. LEXIS 165121 (W.D. Wash. Nov. 19, 2012),

3  Defendant Westinghouse argued that federal maritime law governed because the alleged asbestos

4  exposure was based on the maintenance and repair of naval vessels on navigable waters, while

5  Plaintiff Stevens argued that the case was governed by Washington state law because it was

6  based on diversity jurisdiction.  (*Id.* at 5-6.)

7      The *Stevens* Court applied both prongs of the test in determining that maritime law

8  governed:

9           A party seeking to invoke maritime jurisdiction over a tort claim
           "must satisfy conditions both of location and of connection with
10          maritime activity. The locality test requires that the tort occur on
           navigable waters or, for injuries suffered on land, that the injury be
11          caused by a vessel on navigable waters." *Conner v. Alfa Laval, Inc.*,
           799 F. Supp. 2d 455, 466 (E.D. Pa. 2011) (citations and internal
12          quotations omitted). This test is "satisfied as long as some portion of
           the asbestos exposure occurred on a vessel on navigable waters." Id.
13          at 466. Here, Plaintiffs allege that at least some of Stevens' asbestos
           exposure occurred while aboard Navy vessels "at sea." Marks Decl.,
14          Dkt. #142, Exh. D, 122:23-24. The locality test is satisfied.

15          The connection test requires that the "type of incident involved" have
           "a potentially disruptive impact on maritime commerce," and that "the
16          general character of the activity giving rise to the incident shows a
           substantial relationship to traditional maritime activity." Id. at 463.
17          Here, the second prong is also satisfied. See *Conner*, 799 F. Supp. 2d
           at 463 (finding the connection test was met where a plaintiff who
18          "served aboard Navy vessels" had a "job to maintain equipment that
           was integral to the functioning of the ship"). Stevens alleged that he
19          worked on Westinghouse equipment while under way, which was
           certainly essential to the proper functioning of the vessels he served
20          aboard. Therefore, Stevens' exposure bears significant connection
           maritime activities, and maritime law applies in this case.(*Id.* at 6-7.)

21

22      Here, maritime law should be applied because Plaintiffs allege Mr. Kelly was exposed to

23  asbestos while aboard the USS DOWNES. (See Plaintiffs' Complaint, at 15:22-25.)  In total,

24  Plaintiff sailed aboard the USS DOWNES from about December 1973 - August 1975.  (Kelly

25  Depo., Vol 1, 26:18-20; 32:11-14.)  Mr. Kelly claimed in deposition that his shipboard exposures

26  occurred while the DOWNES was at sea or dockside, obviously in navigable waters. (See Kelly

27  Depo., Vol 1, 37:15-41:19.)

28      Judge Robreno noted earlier in this action in his Order, granting in part and denying in

    part Todd's Motion for Summary Judgment: "It is undisputed that the alleged exposures pertinent

1  to Defendant Todd Shipyards occurred aboard a ship.  Therefore, these exposures were during

2  sea-based work." (Judge Robreno's January 28, 2014 Order, p. 4.)  Judge Robreno noted that,

3  under *Conner v. Alfa Laval, Inc.* (2011) 799 F. Supp. 2d 455, the locality test would still be

4  satisfied "as long as some portion of the asbestos exposure occurred on a vessel on navigable

5  waters," even if a service member of the Navy performed some work at shipyards or aboard a

6  ship that was dry-docked.  (Judge Robreno's January 28, 2014 Order, p. 4, citing *Conner* at 466.)

7  Judge Robreno also noted that, when a worker whose claims meet the locality test was primarily

8  sea-based during the asbestos exposure, those claims will almost always meet the connection test

9  necessary for the application of maritime law.  (Judge Robreno's January 28, 2014 Order, p. 4.,

10  citing *Conner* at 467-469.)  Accordingly, Judge Robreno held that maritime law was applicable to

11  Plaintiffs' claims against Todd Shipyards.  (Judge Robreno's January 28, 2014 Order, p. 4.)

12  **III.   DIFFERENCES BETWEEN MARITIME AND CALIFORNIA LAW**

13        After determining that maritime jurisdiction applies, the Court then applies a choice of

14  law analysis to determine which substantive law to apply. "Whether a state law may provide a

15  rule of decision in an admiralty case depends on whether the state rule 'conflicts' with the

16  substantive principles of federal admiralty law. [S]tate law may supplement maritime law when

17  maritime law is silent or where a local matter is at issue, but state law may not be applied where it

18  would conflict with [federal] maritime law." (*Calhoun v. Yamaha Motor Corp., U.S.A.*, 40 F.3d

19  622, 627 (3d Cir. 1994) aff'd, 516 U.S. 199 [citations omitted].) Four particular issues in this case

20  will be affected by the differences between maritime and state law.

21       **A.      Design Defect Claim[1]**

22        Plaintiffs' Complaint asserts a claim for strict liability-design defect under the "consumer

23  expectations" test set forth in California's current model jury instructions, set forth in CACI

24  Instruction No. 1203.  However, maritime law does not recognize the "consumer expectations"

25  test, but requires the use of the "risk-utility" analysis for a design defect claim.  Moreover, the

26  _____

27     [1]This particular issue has no effect on Todd, because Todd has been adjudicated to not be the supplier of a product,
and thereby not subject to Plaintiffs' strict liability claims.  Maritime law recognizes a strict liability failure to warn claim

28  as set forth in *Restatement (Third) of Torts*, but it does not differ significantly from California's failure to warn claim as
set forth in the parties' stipulated proposed Jury Instruction No. 43, which restates BAJI 9.00.7.

1   burden of proof under maritime law remains entirely with the plaintiff rather than shifting to the

2   defendant as is the case under California state law.

3          As a preliminary matter, federal maritime law is guided by the American Law Institute's

4   Restatement of Torts. (See *Pan-Alaska Fisheries, Inc. v. Marine Constr. & Design Co.*, 565 F.2d

5   1129, 1134 (9th Cir. 1977).)  Since the "Restatement (Third) was finalized in 1998, the Ninth

6   Circuit has relied on the *Restatement (Third) of Torts: Products Liability*" to guide its assessment

7   of product liability claims.  (*Oswalt v. Resolute Industries, Inc.*, 642 F. 3d 856, 860 (9th Cir.,

8   2011).)

9          A design defect under the *Restatement (Third) of Torts* requires:

10              [A product] is defective in design when the foreseeable risks of
                harm posed by the product could have been reduced or avoided by
11              the adoption of a reasonable alternative design by the seller or other
                distributor, or a predecessor in the commercial chain of
12              distribution, and the omission of the alternative design renders the
                product not reasonably safe.
13
        Maritime law, under the Restatement, does not allow for the "consumer expectations" test
14
    and requires analysis under a "risk-benefit" or "risk-utility" test.  "Federal admiralty law, like the
15
    Restatement of Torts, has gradually moved from the ephemeral consumer expectations test to the
16
    more concrete risk-utility test of the Restatement (Third)."  (*Oswalt v. Resolute Indus., Inc.*,
17
    *supra*, 642 F.3d at 60; see generally *Tony Nunes, Charterer's Liabilities Under the Ship Time*
18
    *Charter*, 26 Hous. J. Int'l L. 561, 586 (2004) ("[T]he U.S. Supreme Court has recognized that the
19
    law of products liability is part of the general maritime law. U.S. courts currently apply, among
20
    other tests used to determine liability, the rule set forth in Section 2(b) of the Restatement (Third)
21
    of Torts: Products Liability.").)  "[W]hether a design is 'reasonably safe' is generally to be
22
    'assessed through use of risk-utility balancing.' " (*Dehring v. Keystone Shipping Co.*, 2013 U.S.
23
    Dist. LEXIS 104780, *19 (E.D. Mich. 2013), quoting *Stark v. Armstrong World Indus., Inc.*, 21
24
    Fed.Appx. 371, 375 (6th Cir. 2001).)  Similarly, the Sixth Circuit has noted that not applying
25
    risk-utility analysis in a maritime case can constitute reversible error.  (*Stark v. Armstrong World*
26
    *Indus., Inc.*, 21 Fed. Appx. 371, 375 (6th Cir. 2001), citing *Krummel v. Bombardier Corp.*, 206 F.
27
    3d 548, 552 (5th Cir. 2000).)  As such, the only applicable design defect analysis under maritime
28
    law is the "risk-utility" test.

Moreover, the burden of proof on a "risk utility" test under the Restatement (Third) of Torts rests exclusively on Plaintiffs. (*Dehring v. Keystone Shipping Co.*, 2013 U.S. Dist. LEXIS 104780, *20 (E.D. Mich. 2013).):

> The plaintiff bears the burden of showing that the probability and severity of harm outweigh the burden involved in curing the defect. ... this test generally "requires the plaintiff to produce evidence concerning the frequency of accidents like his own, the economic costs entailed by those accidents, or the extent of the reduction in frequency of those accidents that would have followed on the use of his proposed alternative design."

By contrast, under CACI 1204 -- which sets for the elements of a "risk-benefit" test under California law -- once a plaintiff sets forth a prima facie case, the burden of proof shifts to the defendant to prove "that the benefits of the product's design outweigh the risks of the design."

## B.   Substantial Factor Causation

To prove product liability causation under maritime law, Plaintiffs must prove that Mr. Kelly's exposure to each defendant's product was "a substantial factor in causing the injury he suffered."(*Lindstrom v. A-C Prod. Liab. Tr.*, 424 F.3d 488, 492 (6th Circ.2005).)  To establish this element, Plaintiffs must present evidence of substantial exposure for a substantial period of time. (*Id.*)  "Minimal exposure" to a defendant's product is insufficient. (*Id.*)  Plaintiffs must show a "high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural." (*Id.*)

In *Lindstrom*, Plaintiffs' expert, Dr. Corson, produced an affidavit stating, with regard to the issue of whether Defendants' products  were a "substantial factor" in Lindstrom's mesothelioma:

> Each of Mr. Lindstrom's occupational exposures to asbestos aboard ship to a reasonable degree of medical certainty were [sic] a substantial contributing factor to his development of mesothelioma. The medical and scientific community cannot exclude any specific asbestos  exposure as to Mr. Lindstrom's mesothelioma.  (*Id.* at 493.)

The Trial Court determined this was <u>not</u> sufficient to survive summary judgment, stating:

> Dr. Corson does not specifically reference the product of any particular Defendant. Rather, he opines that there is no safe level of asbestos exposure, and that every exposure to asbestos, however slight, was a substantial factor in causing Lindstrom's disease. If an opinion such as Dr. Corson's would be sufficient for plaintiff to meet his burden, the Sixth Circuit's "substantial factor" test would be

meaningless. Accordingly, Dr. Corson's opinion is insufficient as a matter of law to get Lindstrom past summary judgment. (*Id.*)

The Court of Appeals affirmed the Trial Court's finding, noting that:

> The affidavit does not reference any specific defendant or product, but rather states in a conclusory fashion that every exposure to asbestos was a substantial factor in Lindstrom's illness. The requirement, however, is that the plaintiff make a showing with respect to each defendant that the defendant's product was a substantial factor in plaintiff's injury, see Stark, 21 Fed. Appx. at 375 (HN6Go to the description of this Headnote."Commonly, [the substantial factor] standard is separately applied to each of the defendants."). As a matter of law, Corson's affidavit does not provide a basis for a causation finding as to any particular defendant. A holding to the contrary would permit imposition of liability on the manufacturer of any product with which a worker had the briefest of encounters on a single occasion. (*Id.*)

By contrast, to prove causation under California law, Plaintiffs must present evidence that there is "a reasonable medical probability that the exposure was a substantial factor contributing to the risk of developing cancer." (*Rutherford v. Owens-Illinois, Inc.* (1977) 16 Cal. 4th 953, 982–983.) Plaintiffs' objections to disputed (California) Jury Instruction No. 52 state:

> With regard to "substantial factor," Rutherford purposely notes that the concept "has not been judicially defined with specificity...it is 'neither possible nor desirable to reduce it to any lower terms.'" (*Id.* at 969, internal citations omitted.) Further, "[u]ndue emphasis should not be placed on the term 'substantial.'" (*Id.*) Finally, "[t]he substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical...." (*Id.* at 978.)

Separate from product liability causation, discussed above, Todd Shipyards is only facing liability in this action under a theory of negligence. Maritime tort law embodies the general principles of common law negligence adjusted for the maritime context. (*Regan v. Starcraft Marine, LLC*, 719 F.Supp.2d 690, 695 (W.D.La. 2010); see also *Evergreen Intern., S.A. v. Norfolk Dredging Co.*, 531 F.3d 302, 308 (4th Cir. 2008) ["The elements of a maritime negligence cause of action are essentially the same as land-based negligence under the common law, free of inappropriate common law concepts."].) Accordingly, the plaintiff attempting to plead a cause of action for negligence under general maritime law must allege facts sufficient to support plausible claims that: (1) there was a duty owed by the defendant to the plaintiff; (2) the duty was breached; (3) the plaintiff sustained injury; and (4) there is a causal connection between the defendant's conduct and the plaintiff's injury. (See *Vollmar v. O.C. Seacrets, Inc.*, 831 F. Supp. 2d 862, 866 (D. Md. 2011).)

"Causation under general maritime negligence law is similar to the common law which requires but for causation coupled with proximate or legal causation." (*Evans v. Nantucket Cmty. Sailing, Inc.*, 582 F. Supp. 2d 121, 137 & n.35 (D. Mass. 2008).) "The fault must not only be a but-for cause but the fault which produces liability must be contributory and proximate cause" of the injury. (*Inter-Cities Navig. Corp. v. United States*, 608 F.2d 1079, 1081 (5th Cir. 1979).) Put otherwise, maritime negligence is only actionable "if it is the legal cause of the plaintiff's injuries." (*Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 649 (5th Cir. 1992.) "Legal cause is something more than 'but for' causation, and the negligence must be a 'substantial factor' in the injury." (*Thomas v. Express Boat Co.*, 759 F.2d 444, 448 (5th Cir. 1985.))

### C.     Loss of Consortium

Mrs. Kelly's loss of consortium damages are not available under maritime law. (*Chan v. Soc'y Expeditions, Inc.,* 39 F.3d 1398, 1408 (9th Circ. 1994), citing *Miles*, 498 U.S. at 32.)

### D.     Comparative Allocation of Fault/Damages

Under California's Proposition 51, joint liability is retained for all tortfeasors in respect to economic damages, whereas proportionate fault is applied for non-economic damages. *(Collins v. Plant Insulation Company* (2010) 185 Cal. App. 4th 260, 266.) The Plaintiffs in *Collins* claimed that federal sovereign immunity precluded the Navy from being a "tortfeasor" for purposes of Proposition 51. (*Id.*) However, the *Collins* Court held that the U.S. Navy could be included on the verdict form and apportioned fault, stating:

> The finder of fact must therefore consider all others whose conduct contributed to the plaintiff's injury, whether or not they are named as defendants and regardless of their economic circumstances. (*Id.* at 267, citing *Dafonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 600, 603.)

In reaching its decision, the *Collins* Court noted that "Federal sovereign immunity is thus grounded not on the notion the government is infallible and can do no wrong, but on the jurisdictional theory it must consent to suit before it can be sued for its wrongful conduct." (*Id.* at 273.) The Court also noted that "The Veterans Benefits Act establishes 'as a substitute for tort liability, a statutory 'no fault' compensation scheme which provides generous pensions to injured servicemen, without regard to any negligence attributable to the Government." (*Id.* at 272, citing

1  *Stencel Aero Engineering Corp. v. U.S.* (1977) 431 U.S. 666, 671–672.)

2      Under maritime law, a "proportionate share" approach has been adopted and evolved over

3  the course of the last few decades.  In 1979, the United States Supreme Court, in *Edmonds v.*

4  *Compagnie Generale Transatlantique* (1979) 443 U.S. 256, imposed joint and several liability on

5  multiple tortfeasors, citing and relying upon Sections 880 and 886(a) of the *Second Restatement*

6  *of Torts* in doing so:

7      Likewise, under traditional tort law, a plaintiff obtaining a judgment against more
       than one concurrent tortfeasor may satisfy it against any one of them. Id., § 886. A

8      concurrent tortfeasor generally may seek contribution from another, id., § 886A,
       but he is not relieved from liability for the entire damages even when the

9      nondefendant tortfeasor is immune from liability. Id., § 880. These principles, of
       course, are inapplicable where the injury is divisible and the causation of each part

10     can be separately assigned to each tortfeasor. Id., §§ 433A (1) and 881. (*Id.* at
       260.)

11
       However, as Comment A to the *Third Restatement of Torts*, Section C20, notes, "The rule

12  stated in this Section displaces the application of § 880 and § 886A."  Thus, the law from the

13  *Second Restatement of Torts*, relied upon by the *Edmonds* Court 36 years ago, has been

14  abandoned by the American Law Institute, and is now replaced by a rule addressing the liability

15  for employers who are immune from suit involving their employees' injuries:

16     If a party alleges that the plaintiff's employer bears some responsibility for the plaintiff's

17     injury:

18         (a) If the applicable law of the jurisdiction permits a reduction of recoverable
           damages based on the comparative responsibility of an employer otherwise

19         immune from suit by the plaintiff-employee, or permits a contribution claim by a
           defendant against the employer, the employer is submitted to the factfinder for an

20         assignment of a percentage of comparative responsibility and: (i) the recoverable
           damages are reduced as permitted by the applicable law; or (ii) contribution is

21         awarded in accord with the applicable law and the factfinder's assignment of
           responsibility.

22

23

24

25

26

27

28

(b) If the applicable law of the jurisdiction does not permit either a reduction of recoverable damages based on the comparative responsibility of an employer because of the employer's immunity from suit by the plaintiff-employee or a contribution claim against the employer, the employer is not submitted to the factfinder for an assignment of a percentage of comparative responsibility. [Emphasis added.] (*Restatement of the Law, Third, Torts: Apportionment of Liability,* § C20 (2000).)[2]

In *Taylor v. John Crane, Inc.* (2003) 113 Cal. App. 4th 1063 (a case of a former Navy serviceman who contracted mesothelioma) and *Collins v. Plant Insulation,* supra., (a case involving a former Navy-employed civilian welder), California Courts of Appeal endorsed allocation of Navy fault for comparative fault purposes under California's Proposition 51 (Cal. Civil Code §1431, et seq.).

The *Third Restatement of Torts* notes that: "The clear trend over the past several decades has been a move away from pure joint and several liability. Most jurisdictions have adopted a hybrid form of joint and several and several liability." (Reporters Notes: Comment A, Restatement of the Law, Third, Torts: Apportionment of Liability, § 17 (2000).)

In 1994, the United States Supreme Court issued its opinion in *McDermott, Inc. v. Amclyde,* 511 U.S. 202 (1994). At issue in *McDermott* was whether the liability of non-settling defendants should be calculated with reference to the jury's allocation of proportionate responsibility, or by giving the non-settling defendants a credit for the amount of the settlement. (*Id.* at 204). The *McDermott* Court held that the "proportionate share" approach was correct under maritime law. (*Id.*) In doing so, the *McDermott* Court noted that *United States v. Reliable Transfer* (1975), 421 U.S. 397 had marked the adoption of the "proportionate fault" rule, which had replaced the "divided damages" rule, which had been in place for more than 100 years. (*Id.* at 207.) The *McDermott* Court noted that the old rule was "unnecessarily cruel and inequitable," and that "the certainty and simplicity served by the old rule was outweighed by the interest in

---

[2]Under California's hybrid comparative fault scheme, embodied in California's Proposition 51, employer fault is calculated in order (a) to determine the non-economic damage several liability of the Defendants according to their percentage fault versus the fault percentage of other parties and non-parties, and (b) to reduce, in part, the economic damage joint and several liability of the liable Defendants. In other words, Defendants will be severally liable for their fault percentage of non-economic damages, and will have their joint and several liability for economic damages reduced by a portion of the employer's workers' compensation payment, calculated by multiplying the amount of workers' compensation benefits by the percentage of the total jury damage verdict attributable to economic damages. (See *Sanchez v. Brooke* (2012) 204 Cal. App. 4th 126, 132-133; *Scalice v. Performance Cleaning Systems* (1996) 50 Cal. App. 4th 221, 224, 228-235.)

1  fairness promoted by the proportionate fault rule. (*Id.* at 207-208, citing *Reliable Transfer* at

2  407.)

3      Nowhere in *McDermott* did the Court determine whether or not to assign fault to an

4  immune non-party, or whether to impose liability on a defendant for the fault of an immune non-

5  party. However, the *McDermott* Court refused to apply joint and several liability to make non-

6  settling Defendant Diver Don liable for the fault of Defendant Amclyde, a defendant who

7  Plaintiff knew would be immune from liability. Defendant AmClyde was deemed to be immune

8  from damages because its antecedent contract with McDermott provided that free replacement of

9  defective parts "shall constitute fulfillment of all liabilities…whether based upon contract, tort,

10 strict liability, or otherwise." (*Id.* at 211.) Rather than making Defendant River Don responsible

11 for AmClyde's 32% of the damages in addition to its own 38%, the Court held that the

12 contractual provision granting AmClyde immunity was a "quasi-settlement" in advance of any

13 tort claims. (*Id.*) Accordingly, the *McDermott* Court did not impose liability on River Don for

14 that proportion of fault attributed to AmClyde, even though AmClyde was deemed immune from

15 liability, and whose share of liability would never be allocated to McDermott. (*Id.*)

16     Since *McDermott*, a local U.S. District court has applied the principle of proportionate

17 share liability to non-defendants. In *Russo v. Blue Ocean Shipping* (2003) 2003 U.S. Dist. Lexis

18 25002, the United States District Court for the Northern District of California decided a case

19 involving three plaintiffs who had brought suit against one defendant, who sought to name one of

20 the plaintiffs as a third-party defendant in order to allocate fault to it. (*Id.* at 1-2.) However, the

21 *Russo* Court held that, pursuant to *Reliable Transfer*, it was unnecessary to add one of the

22 plaintiffs as a third-party defendant to proportionately allocate fault:

23     Moreover, as a practical matter, OHS can raise the issue of Russo's fault without Russo
       being joined as a third-party defendant, because he is already present as a plaintiff. As
24     plaintiffs point out, the Court can apportion fault, and offset any judgment for any of the
       parties by the amounts of any comparative negligence or other mitigating factors. (*Id.* at
25     10, referencing *Reliable Transfer* at 411.)

26 The *Russo* Court further noted that:

27     Defendant argues that contributory negligence would not achieve the same result as a
       third-party complaint because maritime law applies joint and several liability. See *Coats*
28     *v. Penrod Drilling Corp.*, 61 F.3d 114, 1122 (5th Cir. 1995). However, joint and several
       liability only applies if there is more than one defendant. If defendant cannot force Russo

into the position of a defendant, joint and several liability does not apply. [Emphasis added.] (*Id.* at 10.)

As the U.S. District Court in *Taurus Marine, Inc. v. Marin County*, 2012 U.S. Dist. LEXIS 16285, (N.D. Cal. 2012) explained:

> The *McDermott* Court noted that joint and several liability allows a plaintiff to recover from one of many defendants when a plaintiff's recovery is limited by factors outside the plaintiff's control, such as a defendant's insolvency, thus making other defendants, rather than the innocent plaintiff, responsible for the shortfall. When a settlement occurs, however, the plaintiff's recovery has not been limited by outside forces, but instead by the plaintiff's own decision to settle. Thus, the court found no reason to allocate a potential shortfall to a non-settling defendant and to allow a plaintiff a double recovery. (*Id.* at 15-16, internal citations omitted.)

In *Taurus*, Judge Hamilton detailed the evolution of maritime law toward comparative fault:

> In 1975, in *United States v. Reliable Transfer Co.*, 421 U.S. 397, 95 S. Ct. 1708, 44 L. Ed. 2d 251 (1975), the United States Supreme Court withdrew its century-old "divided damages" rule requiring equal division of damages in maritime cases where both parties were at fault. See *id.*, 421 U.S. at 403-11. The Court held that when two or more parties have contributed by their fault to cause property damage in a maritime collision or stranding, liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault, and that liability for such damages is to be allocated equally only when the parties are equally at fault or when it is not possible fairly to measure the comparative degree of their fault. Id. at 411.
>
> Nineteen years later, in *McDermott, Inc. v. Amclyde*, 511 U.S. 202, 114 S. Ct. 1461, 128 L. Ed. 2d 148 (1994), the Court addressed the proper method for calculating liability for nonsettling defendants in admiralty tort cases. The Court analyzed the three principal alternatives, and concluded that the liability of nonsettling defendants in such cases should be calculated with reference to the allocation of proportionate responsibility rather than giving nonsettling  [*15] defendants a credit for the amount of the settlements obtained by plaintiffs. *Id.*, 511 U.S. at 204. The Court held that this approach was more consistent with the baseline admiralty approach, announced in *Reliable Transfer*, of dividing damages amongst joint tortfeasors according to the degree of fault. Id., 511 U.S. at 217.
>
> Under *McDermott*, "no suits for contribution from the settling defendants are permitted, nor are they necessary," because nonsettling defendants will pay no more than their share of the judgment, *Id.* at 209 (as determined by the factfinder); see also *Boca Grande Club v. Fla. Power & Light Co.*, 511 U.S. 222, 222-23, 114 S. Ct. 1472, 128 L. Ed. 2d 165 (1994) (under general maritime law, actions for contribution against settling parties are barred). [Emphasis added.] (*Taurus* at 14-15.)

Finally, in *Knight v. Alaska Trawl Fisheries*, 154 F.3d 1042 (9th Cir. Alaska 1998), the Ninth Circuit Court of Appeals noted the clear trend in maritime law is in favor of a system that divides damages on the basis of comparative fault:

Finally, applying comparative fault in seamen injury cases in which the shipowner was partially at fault unifies this area with the growing trend in other maritime cases. In *Reliable Transfer*, the Supreme Court established the rule of comparative fault for ship collision cases. "That a vessel is primarily negligent does not justify its shouldering all responsibility, nor excuse the slightly negligent vessel from bearing any liability at all." 421 U.S. at 406. Maritime law has also long applied the rule of comparative fault in a seaman's unseaworthiness action against a shipowner. See *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 409, 98 L. Ed. 143, 74 S. Ct. 202 (1953). <u>Recently, the Supreme Court held that nonsettling defendants' liability in an admiralty case should be calculated according to the jury's allocation of proportionate responsibility.</u> See *McDermott, Inc., v. AmClyde & River Don Castings, Ltd.*, 511 U.S. 202, 204, 128 L. Ed. 2d 148, 114 S. Ct. 1461 (1994). Comparative fault also applies when a shipowner sues a maritime contractor for property damage. See *Bosnor, S.A.*, 796 F.2d at 786. "<u>The clear trend in maritime cases is to reject all-or-nothing or other arbitrary allotments of liability in favor of a system that divides damages on the basis of the relative degree of fault of the parties.</u>" *Smith & Kelly*, 718 F.2d at 1030. [Emphasis added.](*Knight* at 1047.)

It is noteworthy that the Veterans Benefits Act establishes "as a substitute for tort liability, a statutory "no fault" compensation scheme which provides generous pensions to injured servicemen, without regard to any negligence attributable to the Government." (*Stencel Aero Engineering Corp. V. U.S.* (1977) 431 U.S. 66, 671-672.) In *Feres v. United States*, 340 U.S. 135 (1950), the United States Supreme Court held that an on-duty serviceman who is injured due to the negligence of Government officials may not recover against the United States under the FTCA. (*Id.* at 146.) The Supreme Court in *Stencel* reviewed the *Feres* decision, and concluded that a third-party contractor similarly could not bring a contribution or indemnity suit against the government, noting:

> To permit [petitioner] to proceed . . . here would be to judicially admit at the back door that which has been legislatively turned away at the front door. We do not believe that the [Federal Tort Claims] Act permits such a result." (*Id.* at 673, alterations and omissions in original.)

Here, Mr. Kelly testified during his deposition that he had submitted a claim to the Veterans Administration for benefits concerning his asbestos-related injury. (Kelly Depo, Vol. III, 511:23-512:4.) As such, his claim with the Navy is tantamount to AmClyde's contractual quasi-immunity in *McDermott* because Mr. Kelly had constructive knowledge, like everyone else would have, of the Navy's immunity under the Federal Torts Claims Act prior to his joining the Navy, just as McDermott had knowledge of Amclyde's immunity prior to the two parties entering into a business relationship. Accordingly, the proportionate fault of the U.S.

Navy should be subtracted along with that of other settling defendants from the liability, if any, of the remaining defendants in this action per *McDermott* and its progeny.

Moreover, historically, under many Worker Compensation schemes, the employer may have a lien right to any recovery the employee may be awarded in tort. Courts sometimes do not deduct the amount of the employer's liability from other tortfeasors, because doing so would allow two separate diminutions in plaintiff's potential recovery: (1) by virtue of the reduction of the proportionate share of the employer's fault; and (2) by virtue of the employer later exercising its lien rights against Plaintiff's post-judgment recovery.

Here, however, we have found no law or statute providing a lien right under the Veterans Benefits Act, and no lien of any kind has been filed in this action, despite the fact Mr. Kelly testified concerning his pending claim for VA benefits back in 2012. Accordingly, there is no justification for not including the U.S. Navy on the verdict form, and from subtracting its proportionate share of fault from any potential judgment against the non-settling defendants. Indeed, to not do so would bestow a windfall upon Mr. Kelly. He would receive his Veteran's Benefit Act compensation, <u>and</u> obtain a tort recovery for the Navy's proportionate fault from a party not responsible for the Navy's conduct, all without having to reimburse the United States one penny of the recovery. Such a result would fly in the face of *McDermott*, and be utterly inconsistent with the "proportionate fault" approach that has been adopted.

## IV. IMPACT OF MARITIME LAW ON THIS COURT'S RULINGS ON MOTIONS IN LIMINE

Defendants' Motion in Limine # 2 asked this Court to preclude Plaintiffs' experts from offering "each and every exposure" opinions based upon two grounds: (1) the opinions fail to satisfy the reliability and relevant standard under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); and (2) because the opinions contradict California's legal causation standard under *Rutherford v. Owens Illinois, Inc.*, 16 Cal.4th 953, 978 (1997).

As set forth above, the standard for "substantial factor" causation under maritime law ("substantial factor in causing the injury he suffered") significantly differs from California law ("substantial factor contributing to his risk of developing cancer"). Thus, Defendants request that the Court reconsider its ruling within the context of maritime law under *Lindstrom v. A-C Prod.*

1    *Liab. Tr., 424 F.3d 488* (6th Cir.2005) and *Krik v. Crane Co.*, --- F.Supp.3d ----, 2014 U.S. Dist.

2    LEXIS 175983 (N.D. Ill., Dec. 22, 2014).

3         The *Lindstrom* and *Krik* cases specifically address the type of expert opinion that is

4    necessary to be admissible to prove up "substantial factor" causation under maritime law.  In

5    *Lindstrom*, the Court excluded expert opinion that "did not reference any specific defendant or

6    product, but rather states in a conclusory fashion that every exposure to asbestos was a

7    substantial factor in Lindstrom's illness." (*Lindstrom*, 424 F.3d at 493.)  The Court clarified that

8    "[t]he requirement, however, is that the plaintiff make a showing with respect to each defendant

9    that the defendant's product was a substantial factor in plaintiff's injury." (*Id.*)  Similarly, in *Krik*,

10   the Court found expert testimony inadmissible and insufficient under maritime law where the

11   opinion failed to present any "individualized analysis of [the plaintiff's] level of asbestos

12   exposure." (*Krik*, 2014 U.S. Dist. LEXIS 175983 at *16.)

13        In *Cabasug v. Crane Company* 989 F. Supp. 2d 1027 (D. Haw. 2013), the U.S. District

14   Court for the District of Hawaii noted that the Ninth Circuit had not yet addressed causation

15   under maritime law in the asbestos context. (*Id.* at 1033.)  The *Cabasug* Court concluded  that

16   the Ninth Circuit would follow *Lindstrom*'s guidance in applying  maritime law causation. (*Id.*

17   at 1037.)

18        Here, Plaintiffs' medical expert reports fail to include "reference to any specific

19   defendant" or "individual analysis."[3]  As such, they should be precluded from offering any

20   opinion at trial that exposure to the individual defendants are a substantial factor causing the

21   injury Mr. Kelly suffered, or from offering any generic opinion that "every exposure" is causative

22   of his disease.  Moreover, Defendants ask this Court to preclude Plaintiffs' experts from offering

23   the following opinions:

24        <u>Dr. Ganzhorn</u>: "All of Mr. Kelly's asbestos exposures up until a period of 15 years prior

25   _____

26   [3]In prior cases, Plaintiffs' expert Dr. Brody and Dr. Hammar have attempted to offer opinions that each and every
     exposure a plaintiff has contributes to an increased risk of disease.  However, their reports in the present case fail to
     identify substantial factor opinions as being within the scope of their testimony in this case, and they fail to contain any
27   reference to a specific defendant and/or individual analysis and therefore should not be permitted to offer new substantial
     factor opinions at trial. (See Fed. R. Civ. P. 26(a)(2)(B) & 37(c)(1); Dr. Brody's Expert Report, dated January 4, 2013,
28   attached as Exhibit E to the Baker Decl.; Dr. Hammar's Expert Report dated January 2, 2013, attached as Exhibit F to the
     Baker Decl.

to his diagnosis with malignant peritoneal mesothelioma…should be thought of as causing Mr. Kelly's malignant peritoneal mesothelioma." (See Dr. Ganzhorn's Expert Report, dated March 6, 2015, at p. 11, attached as Exhibit A to the Declaration of Zachariah D. Baker ("Baker Decl.").)

Dr. Horn: (1) "I expect to talk about causation as it specifically relates to Mr. Kelly." (See Dr. Horn's Expert Report, dated January 7, 2013, at p. 18, attached as Exhibit B to the Baker Decl.); and (2) "I have concluded that the work done by other military personnel with gaskets and packing contributed to his risk for the development of mesothelioma." (Dr. Horn's Expert Report dated January 7, 2013, at p. 19, attached as Exhibit B to the Baker Decl.); (3) "All of Mr. Kelly's asbestos exposure should be considered a contributing factor in the development of his malignancy." (Dr. Horn's Expert Report dated December 12, 2011, at p. 25, attached as Exhibit C to the Baker Decl.)

Dr. Cohen: "In my opinion, any exposures that an individual suffered that were in addition to ambient air levels, such as those alleged in this case as to each defendant, would, on a more likely than not basis, have been a substantial factor in causing the alleged disease." (See Dr. Cohen's Expert Report, dated January 7, 2013, at p. 3, attached as Exhibit D to the Baker Decl.)

## V.    CONCLUSION

As addressed above, maritime law should be applied to this action, and will significantly impact the issues of substantial factor causation, Plaintiffs' design defect claim, Mrs. Kelly's loss of consortium claim, and the comparative allocation of fault/damages. Morever, under maritime law, Defendants request the Court to exclude the opinions of Plaintiffs' experts identified above, which were the subject of Defendants' Motion in Limine No. 2.

DATED: April 29, 2015

YARON & ASSOCIATES

By:_____
GEORGE D. YARON
D. DAVID STEELE
Attorneys for Defendant
PUGET SOUND
COMMERCE CENTER,
INC.