1   GILBERT L. PURCELL, ESQ., S.B. #113603
    JAMES P. NEVIN, ESQ., S.B. #220816
2   KIMBERLY J. CHU, ESQ., S.B. #206817
    Email: kchu@braytonlaw.com
3   BRAYTON❖PURCELL LLP
    Attorneys at Law
4   222 Rush Landing Road
    P.O. Box 6169
5   Novato, California  94948-6169
    (415) 898-1555
6   (415) 898-1247 (Facsimile)

7   Attorneys for Plaintiffs

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10               SAN FRANCISCO DIVISION

11  BARRY KELLY and MOLLY KELLY,      )   No. 3:11-cv-03240-VC
                                      )
12              Plaintiffs,           )   PLAINTIFFS' TRIAL BRIEF RE
                                      )   MARITIME LAW
13  vs.                               )
                                      )
14  CBS CORPORATION (FKA VIACOM       )
    INC., FKA WESTINGHOUSE            )
15  ELECTRIC CORPORATION), et al.,    )   Trial Date:   May 11, 2015
                                      )   Judge:        Hon. Vince Chhabria
16              Defendants.           )                 Courtroom 4 - 17th Floor

17

18

19

20              **INTRODUCTION**

21

22      The Court has requested the parties to file this trial brief answering the following

23  questions:

24      I)  Is it correct that maritime law should apply to this case?

25      ii) What are the differences, as applied to this case, between maritime law and California

26          law?

27      iii) Should the application of maritime law change any of the Court's rulings on the

28          motions in limine?

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

1

<u>**PLAINTIFFS ANALYSIS AND RESPONSE**</u>

2

3 A. MARITIME LAW APPLIES.

4        In order for maritime law to apply, a plaintiff's exposure underlying a product liability

5 claim must meet both a locality test and a connection test. The locality test requires that the tort

6 occur on navigable waters or, for injuries suffered on land, that the injury be caused by a vessel

7 on navigable waters.  Work performed aboard a ship that is docked at the shipyard is sea-based

8 work, and is considered performed on navigable waters - this includes work aboard a ship that is

9 in "dry dock."

10  See *Deuber v. Asbestos Corp*., No. 10-78931, 2011 WL 6415339, at *1 n.1 (E.D. Pa. Dec. 2,

11 2011)(Robreno, J.)and  *Mack v. General Electric Co.* 2:10-cv-78940-ER  (E.D. Pa. Oct. 3,2012)

12 (Robreno, J.)

13        The Hon. Eduardo C. Robreno has previously decided in this case, in motions involving

14 defendants Crane Co. and Puget Sound Commerce Center, Inc.(fka Todd Shipyards Corp.), and

15 the ship USS Downes, that the facts satisfy both the "locality test" and "connection test" and the

16 application of maritime law is appropriate.  Judge Robreno noted in these matters that Puget

17 Sound contended that "California and/or maritime law" applied, and both Crane Co. and

18 plaintiffs asserted maritime law applied.

19

20 B.  A COMPARISON OF  MARITIME LAW AND CALIFORNIA LAW

21        1. THE ELEMENTS OF  NEGLIGENCE CAUSES OF ACTION ARE THE SAME.

22        Negligence principles have been incorporated into the general maritime law.  *E. River*

23 *S.S. Corp. v. Transamerica  Delaval,* 476 U.S. 858 (U.S. 1986).  "The elements of a maritime

24 negligence cause of action include: (1) the existence of a duty; (2) breach of said duty; (3)

25 proximate cause; and (4) actual loss or injury to the plaintiff due to the improper conduct."

26 *Gough v. U.S. Navy*, 2009 U.S. Dist. LEXIS 75589, 10 (S.D. Cal. Aug. 25, 2009) (*citing Prince*

27 *v. Thomas*, 25 F. Supp. 2d 1045, 1047 (N.D. Cal. 1997)).

28

2. THE ELEMENTS OF A NEGLIGENT FAILURE TO WARN CLAIM ARE THE SAME.

A manufacturer has a duty to warn about the hazards inherent in its own products. *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 797 (E.D. Pa. 2012) citing *O'Neil v. Crane Co.* 53 Cal 4th 335

3. BOTH MARITIME LAW AND CALIFORNIA LAW RECOGNIZE A "SUBSTANTIAL FACTOR" TEST REGARDING CAUSATION. ALTHOUGH MISUNDERSTOOD AND MISREPRESENTED BY DEFENDANTS AND SOME COURTS, CALIFORNIA LAW AND MARITIME LAW ARE BASICALLY THE SAME.

*Lindstrom v. A.C. Product Liability Trust* 424 F. 3d 488 (6th Cir. 2005) and *Stark v. Armstrong World Industries 21* Fed. Appx. 371; 2001 U.S. App. LEXIS 21684 are 6th Circuit cases often cited for the proposition that the federal law requires "substantial exposure" over a "substantial period of time" to prove "substantial factor." But this is simply not the law where there is expert opinion involved, as will be the case here.

What causes the trouble is an incorrect reading of *Stark* in the first place., which was cited by *Lindstrom*, and which used the language "substantial exposure over a substantial period of time." Although this is used by defendants and courts for the proposition that minimal exposure can never be a substantial factor, this is an incorrect interpretation of *Stark*.

What *Stark* actually says is that <u>without expert testimony</u> you can use circumstantial evidence to show substantial factor but in <u>that instance</u> you have to show "substantial exposure over a substantial period of time" so that there not be liability based solely on a jury's inexpert speculation:

> We do not require that cause necessarily be established by expert testimony. (citation) Nonetheless, this court has expressed the concern that "defendants not be subjected to open-ended liability based solely on a jury's inexpert speculation on proximate cause. In a previous maritime asbestos case, albeit unpublished, a panel of this court interpreted the substantial factor test as "requiring a plaintiff *relying on circumstantial evidence* of exposure to prove causation to show a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural. In other words, substantial exposure is necessary to draw an inference from circumstantial evidence that the exposure was a substantial factor in causing the injury." *Harbour v. Armstrong World Industries, Inc.*, 1991 U.S. App. LEXIS 10867, No. 90-1414, 1991 WL 65201, at *4 (6th Cir. Apr. 25, 1991) (unpublished) (*Stark* at 376emphasis added).

On the other hand, most importantly, and what is missed, is that IF there is expert testimony, minimal exposure may indeed be sufficient. Mr. Stark was exposed to asbestos when he climbed inside a boiler as a "wiper" and relied on his own testimony to establish a circumstantial case. The court held that <u>Stark's testimony alone was circumstantial evidence</u>. and insufficient for a jury to find "substantial factor".

But, the Stark Court added:

> <u>Had Stark presented expert testimony to show that cleaning a boiler even once (or perhaps a few times) is sufficiently hazardous to add a meaningful level of cancer risk, summary judgment might well have been improper,</u> because genuine issues regarding causation, dangerousness and unreasonable failure to warn would have been created. <u>Instead, though, Stark relied on his own testimony</u> to establish a circumstantial case. This is permissible, but the rationale in *Harbour* is a persuasive formulation of what the plaintiff must <u>then</u> show - a substantial exposure for a substantial period of time.
>
> *Stark, supra,* at 380-381emphasis added

Simply put, if there is expert testimony, there is no requirement that there be substantial exposure for a substantial period of time. And *Lindstrom* actually acknowledges this important fact:

> The *Stark* opinion and general logic may suggest that, where an expert witness can testify unequivocally that a defendant's product was the source of the illness, a plaintiff <u>does not need to rely on proof of substantial exposure</u> to establish causation. In this case, however, plaintiffs-appellants presented no such expert.
>
> *Lindstrom, supra*, at 498, emphasis added.

Accordingly, the test for "substantial factor" under both *Stark* and *Lindstrom*, where there is expert testimony, is:

Exposure is a substantial factor in causing injury where the exposure, even if minimal, would have been <u>sufficiently hazardous to add a meaningful level of cancer risk</u>.

This is no different than the substantial factor test under California law:

Exposure to a particular product is a substantial factor in causing or bringing about the disease if in reasonable medical probability it was a substantial factor <u>contributing to the plaintiff's or decedent's *risk* of developing cancer.</u> *Rutherford v. Owens Illinois, Inc.*,16 Cal. 4th

953, 977 (1997) (emphasis added)

The substantial factor test is the same under both maritime law and California law.

4.  REGARDING STRICT PRODUCTS LIABILITY, MARITIME LAW GENERALLY UTILIZES A RISK-BENEFIT TEST. HOWEVER, A CONSUMER EXPECTATIONS TEST MAY BE USED IN "NON-COMPLEX" DESIGN CASES.

The Ninth Circuit held, in *Oswalt v. Resolute Industries, Inc*. 642 F. 3d 856 (9th Cir. 2011): " Since the Restatement (Third) was finalized in 1998. . . we and other circuits have relied on it. (citations). . . (W)e should look to the Restatement (Third) of Torts: Products Liability to guide our assessment of . . . products liability claims, and we therefore apply its principles below.  See Restatement (Third) of Torts: Products Liability § 2 (1998)"

(at 860)

Section 2 of the Restatement provides:

§ 2 Categories of Product Defect

1. A product is defective when, at the time of sale or distribution, it contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings. A product:

(a) contains a manufacturing defect when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product;

(b) is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe;

© is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

Although it is generally true that a design defect, as opposed to a manufacturing defect , is subject to analysis under a risk-benefit test, the Restatement recognizes the consumer expectations test may be used in "non-complex" design cases.

The Reporters Notes to section 2 of the Restatement emphasize:

This Restatement, especially its first four Sections, must be read together, as an integrated whole. The concept of defect is too nuanced to be set forth in a single Section. When read in its totality the Restatement reflects the strong majority of cases. To be sure, in most cases a plaintiff must establish a reasonable alternative design to make out a design defect. But § 2(b) is not the only road to victory in design cases. Section 2, Comment e, and §§ 3 and 4 are alternative grounds for establishing defect. When the facts call for their application a plaintiff need not establish a reasonable alternative design in order to establish defect.

The Reporter's Notes refer to California law, citing *Soule v. General Motors Corp.*, 8 Cal. 4th 548, 568-569 (1994),

(I)n1994, the California Supreme Court limited the application of the consumer expectations test to non-complex design cases. See *Soule, supra*. As discussed above, the current law in California is consistent with this Restatement

Restat 3d of Torts: Products Liability, § 2, emphasis added

And *Soule*, "consistent with the restatement", provides:

The crucial question in each individual case is whether the circumstances of the product's failure permit an inference that the product's design performed below the legitimate, commonly accepted minimum safety assumptions of its ordinary consumers. (at 569-569, emphasis added)

. . .

The consumer expectations test is reserved for cases in which the everyday experience of the product's users permits a conclusion that the product's design violated minimum safety assumptions, and is thus defective regardless of expert opinion about the merits of the design. (at 567)

And so it is here. Asbestos packing, insulation and gaskets are not complex products like automobiles or other machines. A user of these products may be guided by everyday experience to conclude that the products non-complex design did not meet expectations of minimum safety.

Maritime law, in this instance, therefore, does recognize a consumer expectations test for the purposes of strict products liability.

5. STRICT LIABILITY FAILURE TO WARN IS THE SAME UNDER BOTH MARITIME AND CALIFORNIA LAW.

As set forth above, Restatement (Third) of Torts: Products Liability § 2 provides:

c. (A product) is defective because of inadequate instructions or warnings when

the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

This is basically  no different than California law in this regard.

## 6.  MARITIME LAW REQUIRE S THAT DAMAGES BE ASSESSED ON THE BASIS OF PROPORTIONATE FAULT

The rule of how damages are to be apportioned in maritime law cases was fashioned by the United States Supreme Court in *McDermott, Inc. v. Amclyde* 511 U.S. 202 (1994).  It remains the law today.  In *McDermott*, the Court first noted that the previous "divided damages rule", which required an equal division of damages whatever the degree of fault, had been replaced with a rule requiring that damages be assessed on the basis of "proportionate fault", requiring that damages be apportioned according to the percentage of liability assessed by a jury. (at 207-208, citing its decision in *United States v. Reliable Transfer Co.*, 421 U.S. 397, 407 (1975).

In *McDermott*, the Court was presented with the question of whether the liability of nonsettling defendants should be calculated with reference to the jury's allocation of proportionate responsibility, or by giving the nonsettling defendants a credit for the dollar amount of any settlements.  The Court held that the proportionate share approach  was the "superior" method, (*McDermott*, *supra*, at 217), and that nonsettling defendants are liable for their proportion of the damages pursuant to the jury's allocation of fault.  In other words, the amounts of settlements are not relevant in determining the amount owed by nonsettling defendants - and a nonsettling defendant receives no credit for settlement amounts.  "A litigating defendant's liability (does not depend) on the amount of a settlement negotiated by others." (*Id*, at 220)

However, when the plaintiff's recovery is limited "by factors outside the plaintiff's control", such as insolvency, the Limitation of Liability Act or sovereign immunity, joint and several liability applies.  Joint and several liability makes the other defendants, rather than the plaintiff, absorb the "shortfall." *Id*. at 221, citing *Edmunds v. Compagnie Generale Transatlantique* 443 U.S. 256 (1979)

7.  LOSS OF CONSORTIUM IN MARITIME LAW.

Maritime law provides for the recovery of loss of consortium or society damages  by beneficiaries of persons injured or killed on "state territorial waters." *Chan v. Society Expeditons*, 39 F.3d 1398, 1407 (9th Cir. 1994)

C.  THE APPLICATION OF MARITIME LAW DOES NOT CHANGE ANY OF THE COURT'S RULINGS ON THE MOTIONS IN LIMINE.

Dated:  April 29, 2015                            Respectfully submitted,

                                               /s/ Kimberly J. Chu
                                              Kimberly J. Chu S.B. #206817
                                              Email: rgrant@braytonlaw.com
                                              Attorneys for Plaintiffs